Nicholson, C. J.,
delivered the opinion of the Court.
On the 15th of July, 1865, B. A. McDonald executed to D. M. Perkins, a conveyance in trust, to various tracts of land, containing over two thousand acres, specifically described by metes and bounds, and various articles of personal property, specifically enumerated, together with notes, judgments and choses in action, which are set out in detail. After enumerating a number of articles of personal property, consisting of household furniture, two cotton gins, one gin band, three four-horse wagons, there follows this language, “all farming utensils, except such *409 as are exempt from execution;” and then he proceeds, “one corn mill, one,, set of blacksmith tools, one cow, three yearlings, all the hogs and sheep, except the number exempt from execution,” etc. He conveys, also, all that portion of the crop due him as rent for the year 1865. The deed then contains the specific trusts. He first specifies three notes, held -by Benjamin Fanning, for three thousand dollars each, on which Henry Kelso and James Fulton were securities; the said notes having been given for the Hines tract of land. He next specifies a bill of exchange for $15,000, on which ,D. M. Perkins was his indorser. He then adds, that he. is indebted to many other persons, by notes, executed in his name or the firm name of McDonald & Kelso, of which he is .desirous of securing the payment. For that purpose, he provides that the trustee will proceed, as speedily as possible, to collect the notes, and apply the proceeds in payment of the bill of exchange of $15,000. He is directed toicollect the rents, and then he proceeds: “Now, if I should pay said debts, hereinbefore provided -for, by the 1st of September, 1866, then this deed to be void. But if I should fail to pay said debts,, or any part thereof, then the said Perkins shall proceed to sell said lands and personal property, or a sufficiency thereof, for cash, at such time and place as he may select, on some portion of said described premises, and sell the same to the highest bidder, first having advertised the time, place and terms of sale, as required by law, and will apply the proceeds in payment, first; of said bill of exchange indorsed by said Perkins, say $15,000. Secondly, he will apply the proceeds, arising from the sale of the Hines tract of land, *410 to the payment of said three notes, in favor of said Benjamin Fanning, for $3,000 each, etc. Thirdly, the said Perkins’ trustee will pay all the other claims, whether they be in my own name, or the firm name of McDonald & Kelso, alike; and for that purpose he will pay the same pro rata; provided, he is only to pay such of said claims provided in the third place, as are presented by the 1st day of January, 1867,” etc. The said Perkins is authorized and empowered to divide said land into such lots and parcels as he shall deem best for the interest of the parties. Lastly, “the said Perkins will pay over to me the balance of said funds, if any should be left.”
The deed was proven by the two subscribing witnesses, before the Clerk of the County Court of Lincoln County, on the loth of July, 1865, the day of its execution. The certificate of the County Court Clerk pursues the form of the probate set out in the Code, except that he does not certify that the witnesses deposed and said that the bargainor acknowledged the deed “in their presence;” these latter words being omitted. The deed was properly registered on the 17th of July, 1865.
About the 16th of August, 1865, K. Farquharson filed his bill of attachment against McDonald and Perkins, attacking the deed as fraudulent on its face; attaching the lands conveyed, and praying that the deed be set aside for fraud, and the land sold to satisfy his claim. In a short time, various other creditors of McDonald, to the number of nearly thirty, filed similar bills of attachment; all of which were consolidated and heard together.
McDonald and Perkins answer the consolidated bills *411 jointly, and deny all tbe allegations which impute to them either fraud in law or in fact.
Afterward, Perkins filed his cross bill against the attaching creditors, in which he requires them to establish the justness of their claims, and insists that if the deed should be declared valid, they have forfeited any right to claim benefits under it, by attacking its validity.
Before proceeding to examine the several grounds on which the deed is assailed as fraudulent, it may not be improper to notice an objection to the authentication of the deed, which is not raised in the pleadings, but which has been somewhat discussed in the argument. The objection is, that the words “in their presence,” contained in the form for the County Court Clerk’s certificate, in section 2058 of the Code, are not contained in the certificate to the deed. If this point were properly before us, under the pleadings, we should hold that the omission was fully cured by the provision in section 2080 of the Code.
The objection to the deed, mainly pressed and relied on as rendering it void, is based upon the clause conveying the personal 'property, in which, after enumerating “all farming utensils,” the language follows: “except such as are exempt from execution;” and after specifying “all the hogs and sheep,” the words “except the number exempt from execution,” are used.
It is insisted that these exceptions are fatal to the deed, and render it void in law.
It is correctly stated in the argument, that a conveyance in trust, reserving or retaining to the bargainor a benefit on its face to any part of the trust property, is void; and an *412 assignment to chosen creditors, securing any benefit or advantage in the use of the property assigned to the assignor, is void in law, as to all other creditors.
But does this deed reserve or secure any benefit or advantage to McDonald, in the use of any part of the property conveyed by him to Perkins, the trustee? His language is: “I also convey to said Perkins, the following personal property, viz: a parcel of building lumber,. &c., &c.; all farming utensils, except such as are exempt from execution, &e., &c.; all the hogs and sheep, except the number exempt from execution, &c.” What is the natural import of this language? Does it mean that “all the farming utensils,” and “all the hogs and sheep,” are first conveyed to the trustee, and then they are reserved, or retained, or excepted, for the use and benefit of the bargainor? Or does it mean that “all the farming utensils” and “ail the hogs and sheep” left, after taking out what the law exempts from execution, are conveyed to the trustee? The bargainor does not convey all of this property to the trustee; he conveys all except that portion which the law exempts from execution. If he had a dozen plows, and one hundred hogs, and fifty sheep, he meant to convey all of his plows except one — that is, eleven; and all of his hogs and sheep except ten of the former and five of the latter — that is, ninety hogs and forty-five sheep; the one plow, and ten hogs, and five sheep, were intended to be reserved or excepted from the conveyance.
As to the excepted articles, the title never was vested in the trustee, but remained in McDonald, under the protection of the exemption laws. Upon this construction *413 of tbe language of tbe conveyance, there was no reservation of any benefit to McDonald to be derived from any portion of the property conveyed to the trustee.
In the next place, it is to be observed that, although the time for the sale of the property, real and personal, conveyed, is postponed by the deed until the 1st of Sep7 tember, 1866, there is nothing in any of its provisions which expressly reserves to McDonald the use of any of the property. The legal title passed to the trustee, and his right of possession attached as soon as the deed was registered. The deed itself secured to McDonald no right to continue in the use and occupation of the excepted property. He continued in the possession of these excepted articles,, under the “poor” laws.
Again: amongst the articles of personal property conveyed to the trustee, as enumerated and specified on the face of the deed, there is none that was consumable in the use thereof; so that, looking at the face of the deed, we find nothing which reserves or retains any benefit or advantage to the bargainor. He divests himself of his title to all the land and personal property described and enumerated, and retains the title in himself to so much of the farming implements, hogs and sheep, as the law sets apart for poor persons. In the property conveyed, he ceased to have any right of use or control, so soon as the deed was registered and the trust was accepted.
But it is insisted with much earnestness and confidence, that the present case is controlled by the case of Sugg v. Tillman, 2 Swan, 208. It requires but a slight reference to the language of the deed, as copied by *414 Judge Caruthers into his opinion, to show a marked distinction between the • two cases. Judge Caruthers states the case as follows:
“After conveying all his land, negroes, stock, corn, fodder, bacon, pork, and farming, household and kitchen' utensils, and all his furniture, a reservation upon it is inserted in these words: ‘Reserving to myself, however, out of the aforesaid stock, farming utensils, provender, provisions, household and kitchen furniture, (as all of my property of that description is intended to be embraced by this conveyance,) so much as I am by law allowed to retain free from execution.’”
The difference between the two deeds is this: In McDonald’s deed, he excepts from his conveyance so many of the farming utensils and of the hogs and sheep as are exempted by law from execution. In Tillman’s deed, he says, expressly, that he intends all of his stock, farming utensils, provender, provisions, household and kitchen furniture, to be embraced by his conveyance; but notwithstanding he has conveyed all, yet he undertakes to reserve to himself so much thereof as the law allows him to retain free from execution. Judge Caruthers fully comprehended the meaning of Tillman’s deed; for he says: “Now, is there not an express reservation of a portion of the property conveyed, for the use of the debtor, in the clause above extracted?” Unquestionably, there was such reservation of the property expressly embraced in his deed; and as a portion of the-property so ' reserved was consumable in its use, the case came literally within the authorities which declare such deeds fraudulent and' void.
*415 But it is not clear that the insertion in a trust deed of consumable property, which was not subject to execution, with a distinct reservation of the bargainor’s right to use it, would, per se, render the deed fraudulent. If the property reserved, whether consumable or not, was so described as to be distinguishable from the property of like character not exempt, no inference of fraud would arise.
But if the object of the bargainor was to use the exemption laws as a mask for protecting the property subject to execution, by so mingling and confounding the exempted and the unexempted articles as to hinder and embárrass creditors, then the deed would be fraudulent. That was the view taken of the deed of Tillman by Judge Caruthers, and in that view the decision may be maintained. In this view, the deed would be fraudulent, whether the exempted property reserved was consumable in its use, or not. The deed of McDonald is subject to no such objection, for the reason that the exempted property was not . included therein, but was expressly excepted and excluded from its provisions; and there was no reservation of the property conveyed, either consumable or not consumable, for his own benefit.
The decision in Sugg v. Tillman, .is rested on another ground, which comes legitimately under consideration M the case before us. This objection to Tillman’s deed is stated by Judge Caruthers, as follows:
“ But, upon another ground, it (the reservation) would avoid the deed. It is in the nature of a sale of all the property of the vendor of the same nature, to these trustees, for the payment of debts, except so much ol *416 the same as be is allowed by law to hold exempt from execution. Now, what is sold is not separated from that which is reserved from the sale. * * The vendees or trustees cannot bring trover for the quantity conveyed to them, because it is not separated from the part retained. They have no title in any particular thing or quantity. * * The property, therefore, under this principle, not passing at all, remains subject to other execution creditors.”
It is to be observed tbat this objection to the deed is not made to rest upon the ground that the conveyance is void for fraud, but upon the ground that no title passed to the trustees. It is readily conceded that, as to those articles of property conveyed, which were of the same character with the articles reserved, no title would pass until the party having a right to make the selection had done so. And until the selection was made, the property of that character would be subject to execution by other creditors: Benj. on Sales, 242; Gillet v. Hill, 5 Taunt., 617. But if there was no fraud in making the reservation of property exempt from execution, without separating it from property of the same character conveyed, the deed would be valid, and pass the title to all other property not of the same character with that exempt from execution. With this qualification, we recognize the principle of law declared 4 by Judge Ca-ruthers.
In the deed of McDonald, all the property, real, personal and mixed, conveyed to the trustee, is specified and described, except the farming utensils, the hogs and sheep; everything else is conveyed specifically and absolutely *417 and no question can be made as to the title having passed so soon as the deed was registered'. ' As to the farming utensils, the hogs and the sheep, the title did not pass to the trustee, because the exempted and unexempted portions thereof were not set apart and separated; but as the proof shows that this separation was; made soon after the deed was made, and before any execution or attachment was levied thereon, we hold that' the';deed was in no wise affected by the clauses excepting -the farming utensils, hogs and sheep, not subject to execution, from the operation of the deed. Benjamin on Sales, 248.
The objection to the deed, because the time for the sale of the property was postponed from July 15th, 1865, until September, 1866, is fully met by the cases of Roane v. Bank of Nashville, 1 Head, 531, and Bennett v. Union Bank, 5 Hum., 612.
The objection, that only those creditors who should present their claims by the 1st of January, 1867, should share in the benefits of the deed, is met by the case of Mayer v. Pulliam, 2 Head, 346.
The objection that the deed closes with a provision that any balance, after paying the debts, shall be paid over to McDonald, is met by the case of Austin v. Johnson, 7 Hum., 191.
Our conclusion is, that there is nothing on the face of the deed from which we are authorized to hold that it was made to hinder, delay or defraud creditors.
The only other ground on which the deed is attacked, is, that McDonald remained in possession of the property after the deed was executed. This allegation is made in some of the attachment bills filed a few weeks after the *418 date of the deed. Defendants, McDonald and Perkins, deny the allegation, except as to the residence of McDonald in Fayetteville. The proof shows that some few weeks after the date of the deed the trustee took charge .of all of the property except the residence, which McDonald continued to occupy. McDonald and Perkins concur in the statement in their answer, that they considered McDonald as having a right to retain the property until default in payment of the debts. The deed .contains no express direction as to the time when the trustee should take possession of the residence, but we infer from the directions as to the choses in action, and as to the rents of the lands, that the continuance of McDonald in the residence was not inconsistent with the deed. The attaching creditors, who attached the property soon after the deed was made, took no steps to disturb the possession of McDonald by having a receiver appointed to rent it out; nor do we see that the beneficiaries under the deed objected to the construction placed upon the deed by the trustee. Our conclusion is, that the retention of the residence by McDonald is satisfactorily explained by the circumstances, and that it was not fraudulent. Sommerville vs. Horton, 4 Yer., 541.
Holding, as we do, that the deed executed by McDonald, on the 15th of July, 1865, was valid and unaffected by fraud, either in law or in fact, it follows that the legal title to ■ the property conveyed passed, upon the registration of the deed to Perkins for himself and for such other creditors of McDonald as might elect within the time prescribed to accept its benefits. Upon the registration of the deed, McDonald was divested of the legal *419 title, and the law presumes that the benefits designed for the beneficiaries will be accepted by them, and the title vests in the trustee, irrevocable by the grantor, to await the election of the beneficiaries. 3 Yer., 257; 3 Hum., 446; 1 Head, 186; Burrill on Assign., 351; 4 Cold., 630.
But while it is true that all the beneficiaries under a trust deed are presumed to accept its benefits, it is equally true that they may repudiate and reject the deed. 10 Hum., 371; 3 Head, 335; 4 Cold., 626. And any distinct and unequivocal act of renunciation and repudiation of the benefits of the deed, by any of the creditors intended to be benefited, will operate as an estoppel against further claims under the deed. Hill on Trustees, 472; Furman v. Fisher, 4 Cold., 626.
The decrees made by the Chancellor are affirmed, ex■cept so much thereof as determines that the special commissioner or Clerk and Master shall ’take proof, and report whether what is known as Confederate money constitutes in whole or in part the consideration, directly or indirectly, of any of the claims - against said McDonald, and declaring all such claims to be null and void. In this respect, the decree of the Chancellor is reversed; in all other respects, the same will be affirmed. The cause is remanded for further proceedings in carrying out said decrees, as modified, in pursuance of this opinion. The costs will be paid by the appellants.